UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 8:21-cr-

EDWARD CHRISTOPHER
WHITE, JR.

### PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Karin

Hoppmann, Acting United States Attorney for the Middle District of Florida, and

the defendant, EDWARD CHRISTOPHER WHITE, JR, and the attorneys for the

defendant, Jason Mehta, Esq., and Lee Bentley, Esq., mutually agree as follows:

**A.    Particularized Terms**

1.    Count(s) Pleading To

The defendant shall enter a plea of guilty to Count One and Count Two of the

Superseding Information.  Count One charges the defendant with conspiracy to

defraud the United States and pay and receive kickbacks, in violation of 18 U.S.C. §

371.  Count Two charges the defendant with the receipt of kickbacks, in violation of

42 U.S.C. § 1320a-7b(b)(1).

2.    Maximum Penalties

Count One carries a statutory maximum term of imprisonment of five years, a

fine of not more than $250,000, or twice the gross gain caused by the offense, or

Defendant's Initials _Ew_                          AF Approval A.S. for M.T.

twice the gross loss caused by the offense, whichever is greater, a term of supervised release of not more than three years, and special assessment of $100 per felony count.

Count Two carries a statutory maximum term of imprisonment of five years, a fine of not more than $250,000, or twice the gross gain caused by the offense, or twice the gross loss caused by the offense, whichever is greater, a term of supervised release of not more than three years, and special assessment of $100 per felony count.

3.    Elements of the Offense(s)

The defendant acknowledges understanding the nature and elements of the offense(s) with which defendant has been charged and to which defendant is pleading guilty.

The elements of Count One are:

| | |
|---|---|
| First: | two or more people in some way agreed to try to accomplish a shared and unlawful plan; |
| Second: | the Defendant knew the unlawful purpose of the plan and willfully joined in it; |
| Third: | during the conspiracy, one of the conspirators knowingly engaged in at last one overt act described in the Superseding Information; and |
| Fourth: | the overt act was knowingly committed at or about the time alleged in the Superseding Information and with the purpose of carrying out or accomplishing some object of the conspiracy. |

The elements of Count Two are:

| | |
|---|---|
| First: | the Defendant asked for or received remuneration directly or indirectly, openly or secretly, in cash or in kind; |
| Second: | the payment asked for or received was in return for: |

Defendant's Initials _____                    2

    a.  referring an individual to a person for the furnishing or arranging for the furnishing of an item or service that could be paid for, in whole or in part, by a Federal health care program; or

    b.  Purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering, any good, facility, service, or item that could be paid for, in whole or in part, by a Federal health care program; and

**Third:**    the Defendant did so knowingly and willfully.

4.    <u>Indictment Waiver</u>

Defendant will waive the right to be charged by way of indictment before a federal grand jury.

5.    <u>No Further Charges</u>

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida and the Fraud Section, Criminal Division of the United States Department of Justice (the "Fraud Section") (the United States Attorney's Office for the Middle District of Florida and the Fraud Section referred to herein collectively as the "United States") not to charge defendant with committing any other federal criminal offenses known to the Fraud Section or the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

6.    <u>Exclusion from a Federal Health Care Program</u>

The defendant understands and acknowledges that as a result of this plea, the defendant will be excluded from Medicare, Medicaid, and all Federal health care

Defendant's Initials _Cw_        3

programs.  The defendant agrees to complete and execute all necessary documents provided by and department or agency of the federal government, including but not limited to the United States Department of Health and Human Services to effectuate this exclusion within 60 days of receiving the documents.  This exclusion will not affect defendant's right to apply for and receive benefits as a beneficiary under any Federal health care program, including Medicare and Medicaid.

7.    Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a).  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.4., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level.  The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely

Defendant's Initials _Cu_           4

with the United States Attorney's Office for the Middle District of Florida and the Fraud Section, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

8.   Mandatory restitution to Victim of Offense of Conviction

Pursuant to 18 U.S.C. § § 3663A(a) and (b), defendant agrees to make full restitution to the U.S. Department of Health and Human Services.  The parties agree that the amount of restitution owed is $53,699,934.

9.   Adjusted Offense Level – Recommendation

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States and the defendant agree to recommend that the defendant's adjusted offense level be set at 30, as determined below:

| Base Offense Level | 2B4.1 | 8 |
|---|---|---|
| Improper Benefit Conferred ($53 million) | 2B1.1 | 22 |
| Leader/Organizer | 3B1.1 | 3 |
| Acceptance of Responsibility | 3E1.1 | -3 |
| Total Anticipated Offense Level | | 30 |

The defendant understands that this recommendation is not binding on the court or the United States, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

10.   Cooperation - Substantial Assistance to be Considered

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury

Defendant's Initials _CW_                    5

or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require.  If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the Fraud Section and the United States Attorney's Office for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG § 5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both.  If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the Fraud Section and the United States Attorney's Office for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b).  In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the Fraud Section and the United States Attorney's Office for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that

Defendant's Initials _Cw_                    6

determination, whether by appeal, collateral attack, or otherwise. The parties agree
that the Fraud Section will be responsible for filing any motion for a reduction of
sentence that might be made in this case.

11. Use of Information - Section 1B1.8

Pursuant to USSG § 1B1.8(a), the United States agrees that no self-
incriminating information which the defendant may provide during the course of
defendant's cooperation and pursuant to this agreement shall be used in determining
the applicable sentencing guideline range, subject to the restrictions and limitations
set forth in USSG § 1B1.8(b).

12. Cooperation - Responsibilities of Parties

    a.    The United States will make known to the Court and other
relevant authorities the nature and extent of defendant's cooperation and any
other mitigating circumstances indicative of the defendant's rehabilitative
intent by assuming the fundamental civic duty of reporting crime. However,
the defendant understands that the United States can make no representation
that the Court will impose a lesser sentence solely on account of, or in
consideration of, such cooperation.

    b.    It is understood that should the defendant knowingly provide
incomplete or untruthful testimony, statements, or information pursuant to
this agreement, or should the defendant falsely implicate or incriminate any
person, or should the defendant fail to voluntarily and unreservedly disclose
and provide full, complete, truthful, and honest knowledge, information, and

Defendant's Initials           7

cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1)     The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)     The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement.  With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recission of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges

Defendant's Initials _Cw_                    8

which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)     The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)     The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

13.     <u>Forfeiture of Assets</u>

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture,

Defendant's Initials _____     9

pursuant to 18 U.S.C. § 982(a)(7), whether in the possession or control of the United States, the defendant or defendant's nominees.

The assets to be forfeited specifically include, but are not limited to, the sum of at least $33,321,712 in proceeds the defendant admits he obtained as the result of the commission of the offenses charged in Count One and Count Two, to which the defendant is pleading guilty.

The assets to be forfeited specifically include, but are not limited to, the following:

1.  Real property located at 22020 Front Beach Rd, Unit 2, Panama City Beach, Florida 32413;

2.  Real property located at 3232 Magnolia Islands Blvd, Panama City Beach, Florida 32408;

3.  1985 Cessna Citation SII S550 aircraft, S/N S550-0111, Tail Number N17LP;

4.  2018 Range Rover, VIN SALWZ2SE4JA184013;

5.  2019 Mercedes-Benz Sprinter Van, VIN WDAPF1CDXKP051312;

6.  $5,312.95 seized from Centennial Bank account number 503081134, held in the name of White Hewitt-Air Corp;

7.  $124,280.34 seized from Centennial Bank account number 503088255, held in the name of Christopher White and Brian Moore;

8.  $1,197.00 seized from Centennial Bank account number 503182370, held in the name of D.A.R.C. LLC dba D.A.R.C. Enterprises;

9.  $1,910.42 seized from Centennial Bank account number 503182119, held in the name of White Medical LLC;

Defendant's Initials _CW_                      10

10. $9,742.69 seized from Centennial Bank account number 503182905, held in the name of White Oil & Gas LLC;

11. $902.81 seized from Centennial Bank account number 503182348, held in the name of Whitewater Consulting LLC;

12. $603,818.00 seized from Regions Bank account number 0263433532, held in the name of The Edward Christopher White, Jr. Family Protection Trust; and

13. $580,255.00 seized form Pinnacle Bank account number 800105121305, held in the name of The Edward Christopher White, Jr. Family Protection Trust.

which assets represent or were funded by proceeds of the offense or offenses to which the defendant is to plead guilty.

The defendant consents to the filing of a motion by the United States for immediate entry of an order of forfeiture of proceeds and preliminary order of forfeiture of specific assets. The net proceeds from the forfeiture and sale of any specific asset(s) will be credited to and reduce the amount the United States shall be entitled to forfeit as substitute assets pursuant to 21 U.S.C. § 853(p).

The defendant acknowledges and agrees that: (1) the defendant obtained at least $33,321,712 as a result of the commission of the offenses, and (2) as a result of the acts and omissions of the defendant, the proceeds not recovered by the United States through the forfeiture of the directly traceable assets listed herein have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence. Therefore, the defendant agrees that, pursuant to 21 U.S.C. § 853(p), the United States is entitled to forfeit any other property of the

Defendant's Initials _*ECW*_          11

defendant (substitute assets), up to the amount of proceeds the defendant obtained, as the result of the offenses of conviction.  The defendant further consents to, and agrees not to oppose, any motion for substitute assets filed by the United States up to the amount of proceeds obtained from commission of the offenses and consents to the entry of the forfeiture order into the Treasury Offset Program.

The defendant additionally agrees that since the criminal proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence, the preliminary and final orders of forfeiture should authorize the United States Attorney's Office for the Middle District of Florida to conduct discovery (including depositions, interrogatories, requests for production of documents, and the issuance of subpoenas), pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, to help identify, locate, and forfeit substitute assets.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

Defendant's Initials _____        12

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government.  Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered.  In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture (including substitute assets) and to transfer custody of such assets to the United States before the defendant's sentencing.  To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years.  The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct.  The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

Defendant's Initials _*av*_          13

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to any substitute assets before the defendant's sentencing.  In addition to providing full and complete information about substitute assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance and may be eligible for an obstruction of justice enhancement.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement.  The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including the forfeiture of any substitute assets, is final.

Defendant's Initials _*Cu*_       14

**B.**     **Standard Terms and Conditions**

1.     Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement.  The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (18 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013.  The special assessment is due on the date of sentencing.

The defendant understands that this agreement imposes no limitation as to fine.

Defendant's Initials _Cw_            15

2.     Supervised Release

The defendant understands that the offense(s) to which the defendant is

pleading provide(s) for imposition of a term of supervised release upon release from

imprisonment, and that, if the defendant should violate the conditions of release, the

defendant would be subject to a further term of imprisonment.

3.     Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a

defendant who is not a United States citizen may be removed from the United States,

denied citizenship, and denied admission to the United States in the future.

4.     Sentencing Information

The United States reserves its right and obligation to report to the Court and

the United States Probation Office all information concerning the background,

character, and conduct of the defendant, to provide relevant factual information,

including the totality of the defendant's criminal activities, if any, not limited to the

count(s) to which defendant pleads, to respond to comments made by the defendant

or defendant's counsel, and to correct any misstatements or inaccuracies.  The

United States further reserves its right to make any recommendations it deems

appropriate regarding the disposition of this case, subject to any limitations set forth

herein, if any.

5.     Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the

defendant agrees to complete and submit to the United States Attorney's Office and

Defendant's Initials _____                    16

the Fraud Section within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his/her financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he/she has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.    <u>Sentencing Recommendations</u>

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision, until it has had an opportunity to consider the presentence report prepared by the

Defendant's Initials _*Gw*_                17

United States Probation Office.  The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office.  Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement.  The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.     Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises

Defendant's Initials _*aw*_                    18

its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then

the defendant is released from his waiver and may appeal the sentence as authorized

by 18 U.S.C. § 3742(a).

8.    Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the

United States Attorney for the Middle District of Florida and the Fraud Section, and

cannot bind other federal, state, or local prosecuting authorities, although the Office

of the United States Attorney for the Middle District of Florida and the Fraud

Section will bring defendant's cooperation, if any, to the attention of other

prosecuting officers or others, if requested.

9.    Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in

whole or in part, upon a showing of good cause, and filed in this cause, at the time of

defendant's entry of a plea of guilty pursuant hereto.

10.    Voluntariness

The defendant acknowledges that defendant is entering into this agreement

and is pleading guilty freely and voluntarily without reliance upon any discussions

between the attorney for the government and the defendant and defendant's attorney

and without promise of benefit of any kind (other than the concessions contained

herein), and without threats, force, intimidation, or coercion of any kind.  The

defendant further acknowledges defendant's understanding of the nature of the

offense or offenses to which defendant is pleading guilty and the elements thereof,

Defendant's Initials _*CW*_                    19

including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any).  The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial.  The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement.  The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.   Factual Basis

Defendant is pleading guilty because defendant is in fact guilty.  The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and

Defendant's Initials _____                    20

were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

<u>FACTS</u>

The United States and the defendant stipulate to the following facts:

Florida Pharmacy Solutions, LLC ("FPS"), was a Florida corporation owned by co-defendant JAMES WESLEY MOSS ("MOSS"). Co-defendant DAVID BYRON COPELAND ("COPELAND") was a co-owner of FPS for a time. FPS was a compounding pharmacy with principal places of business in Dade City and Zephyrhills, Pasco County, Florida. MOSS served in various management positions of FPS including as President, Chief Executive Officer, and Director. MOSS maintained signature authority on FPS bank accounts at Bank of America, account number ending in 8718; and at Wells Fargo Bank, account number ending in 6675.

Mediverse, LLC ("Mediverse") was a Florida Limited Liability Company owned and controlled by co-defendant EDWARD CHRISTOPHER WHITE ("WHITE"), who operated Mediverse as a pharmacy consulting and marketing firm. WHITE performed various consulting and sales marketing services for FPS through Mediverse. Helix Management Solutions, LLC ("Helix") was a Florida Limited Liability Company owned and controlled by MOSS and WHITE that performed various medical billing services and marketing services. TDSNOLEI, LLC

Defendant's Initials _____      21

("TDSNOLE1"), was a Florida Limited Liability Company controlled by COPELAND that provided certain sales and marketing services for FPS.

## I.   Compound Medications and TRICARE Scheme

On or about October 21, 2014, MOSS signed a contract with co-defendant MICHAEL ALTON GORDON ("GORDON") whereby GORDON became a Service Consultant for FPS.  Mike Gordon, LLC, and Balanced RX, LLC ("Balanced Rx"), were Florida Limited Liability Companies that were owned and controlled by GORDON.

TRICARE was a health care benefit program of the United States Department of Defense ("DoD"), Military Health System, which provided coverage for DoD beneficiaries worldwide, including active duty service members, National Guard and Reserve members, retirees, their families, and survivors.  TRICARE is a "health care benefit program," affecting interstate commerce, as defined in 18 U.S.C. § 24.

Beginning in or about November 2012, and continuing through in or about September 2015, in the Middle District of Florida and elsewhere, WHITE knowingly and willfully conspired with MOSS, COPELAND, GORDON and others to commit offenses against the United States, that is, soliciting and receiving remuneration (kickbacks and bribes), in violation of 42 U.S.C. § 1320a-7b(b)(1), and offering and paying remuneration (kickbacks and bribes), in violation of 42 U.S.C. § 1320a-7b(b)(2).

Defendant's Initials _____          22

MOSS, WHITE, and others submitted false and fictitious claims to TRICARE for expensive compounded prescription drugs, a practice known as "test billing," for the purpose of learning whether TRICARE would pay a claim for those prescriptions and which ingredients in a compounded prescription would result in the highest reimbursement to FPS from TRICARE. After learning whether TRICARE would pay, they reversed or withdrew the claim.

MOSS, WHITE, and others requested doctors to sign so-called "Blanket Letters of Authorization" that purported to authorize FPS to alter the ingredients of any compounded prescription without any additional consultation with, or permission from, the doctor and without obtaining a new prescription, for the purpose of ensuring reimbursement to FPS from TRICARE and thus maximizing the profitability of FPS.

Over the course of the conspiracy, MOSS and others used FPS to submit claims for payment to TRICARE for providing expensive prescription compounded drugs to TRICARE beneficiaries living in approximately 30 states and several foreign countries. Also, over the course of the conspiracy, independent contractor sales and marketing representatives working with WHITE and MOSS would fund expensive hunting trips and outdoor adventures for doctors to induce them to procure and refer prescriptions for expensive compounded drugs for their TRICARE patients to be filled by FPS.

Defendant's Initials _____        23

Such inducements to the doctors constituted illegal kickbacks and bribes.

As part of the conspiracy, WHITE also solicited and received the payment of kickbacks from others involved in the compound pharmacy scheme. For example, on or about June 15, 2015, WHITE received a $4.9 million kickback payment in exchange for referring TRICARE beneficiaries to FPS. Specifically, the payment was made to Mediverse's Wells Fargo Bank account ending in 1659, which WHITE controlled. In total, FPS paid WHITE approximately $11,718,474 in kickbacks in exchange for referring TRICARE beneficiaries to FPS. TRICARE paid FPS approximately $22 million for compounded medications for the TRICARE beneficiaries that WHITE referred to FPS.

## II.     Genetic Testing and Medicare Scheme

WHITE continued to use Mediverse and Helix to continue to conspire with others to defraud the United States and pay and receive kickbacks through August 2019. WHITE also utilized Whitewater, LLC ("Whitewater"), a Florida Limited Liability Company owned and controlled by WHITE, and White Medical, LLC ("White Medical"), a Florida Limited Liability Company owned and controlled by WHITE, as genetic testing consulting and marketing firms. WHITE and his co-conspirators continued to defraud the United States by targeting Medicare, which is a "health care benefit program" as defined in 18 U.S.C. § 24. WHITE utilized Helix, Whitewater, and White Medical to refer Medicare beneficiaries for medically unnecessary cancer genetic tests, also known as CGx tests. WHITE, through Helix

Defendant's Initials _____ _cw_                    24

and Whitewater, along with other patient brokers, referred Medicare patients to laboratories for medically unnecessary CGx tests, in exchange for unlawful kickbacks and bribes. The laboratories included LabSolutions, Med Health Services, Personalized Genetics, and Laboratory 1, all of which purported to provide laboratory testing services to Medicare beneficiaries.

In some cases, WHITE concealed the kickbacks and bribes by entering into sham contracts that falsely represented the laboratories, such as Personalized Genetics, would pay WHITE for hourly marketing services, when in fact the payments were kickbacks and bribes in exchange for patient referrals to the laboratories. In reality, the illegal kickbacks were calculated based on a flat rate per patient that the laboratories collected from insurance, including Medicare.

In the contract WHITE executed with LabSolutions, WHITE falsely represented that LabSolutions would pay WHITE and his companies to "promote, sell, recommend, and endorse" LabSolutions's testing services to "physicians, clinics, medical practices and other health care providers who required [testing services]," and that when WHITE's "efforts produce[d] a healthcare provider that use[d]" LabSolutions's testing services, LabSolutions would pay WHITE and his companies 45% of the monthly net revenue that LabSolutions received from insurance reimbursements for tests referred by that healthcare provider.

In reality, WHITE and his co-conspirators operated call centers that ran telemarketing campaigns designed to convince Medicare beneficiaries to agree to take medically unnecessary CGx tests. WHITE understood that the tests were specifically

Defendant's Initials _____        25

marketed and used as "preventive" or "screening" tests, rather than diagnostic tests used to treat or diagnose a specific illness, symptom, complaint or injury of the beneficiaries. WHITE and his co-conspirators then paid unlawful kickbacks and bribes to telemedicine companies, including Lotus Health, LLC, which was owned by Richard Garipoli, in exchange for doctors' orders authorizing the genetic tests. WHITE understood that the tests were ordered by doctors who were not going to use the results in the management of the beneficiaries' specific medical problems.

In total, beginning between approximately January 2017 and August 2019, LabSolutions received approximately $19,699,934 from Medicare for CGx testing for Medicare beneficiaries WHITE recruited and referred. Further, Personalized Genetics, Med Health Services, and Laboratory 1 received approximately $12 million from Medicare for CGx testing for Medicare beneficiaries WHITE recruited and referred. In sum, WHITE caused the payment of approximately $31 million in false and fraudulent claims for CGx test that were not medically necessary, were not used to treat or diagnose a specific illness, symptom, complaint or injury of the beneficiaries, not ordered by a doctor who used the results in the management of the beneficiaries' specific medical problems, and that were procured through the payment of illegal kickbacks and bribes. In exchange, LabSolutions paid WHITE or his companies approximately $15,061,317, and Personalized Genetics, Med Health Services, and Laboratory 1 paid WHITE or his companies approximately $6,541,921 through a third-party company.

In total, WHITE received $33,321,712 in proceeds derived from kickbacks from

Defendant's Initials _Cw_              26

FPS, LabSolutions, Personalized Genetics, Med Health Services, and Laboratory.

The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for my guilty plea to the charges against me.  It does not include all of the facts known to me concerning criminal activity in which I and others engaged.  I make this statement knowingly and voluntarily and because I am in fact guilty of the crimes charged.

12.   Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials _____   27

13.   Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this _17th_ day of September, 2021.

KARIN HOPPMANN
Acting United States Attorney

EDWARD CHRISTOPHER
WHITE, JR.
Defendant

ALEJANDRO J. SALICRUP
Trial Attorney
Criminal Division, Fraud Section, DOJ

JASON MEHTA, Esquire
Attorney for Defendant

CARLOS LOPEZ
Trial Attorney
Criminal Division, Fraud Section, DOJ

LEE BENTLEY, Esquire
Attorney for Defendant

JULIE HACKENBERRY
Assistant United States Attorney

FRANK TALBOT
Assistant United States Attorney
Chief, Jacksonville Division

JOSEPH BEEMSTERBOER
Acting Chief
Criminal Division, Fraud Section, DOJ

Defendant's Initials _aw_                     28

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 8:21-cr-

EDWARD CHRISTOPHER WHITE,
JR.

## PERSONALIZATION OF ELEMENTS

### Count One

1. Did you and at least one other person agree to try to accomplish a shared and unlawful plan to defraud the United States and pay and receive kickbacks?;

2. Did you know the unlawful purpose of the plan and willfully join in it?;

3. During the conspiracy, did you or your co-conspirators knowingly engage in at least one overt act described in the Superseding Information?; and

4. Was the overt action knowingly committed at or about the time alleged in the Superseding Information with the purpose of carrying out or accomplishing some object of the conspiracy?

### Count Two

1. Did you ask for or receive remuneration directly or indirectly, openly or secretly, in cash or in kind?;

2. Was the payment you asked for or received in return for:

   a. referring an individual to a person for the furnishing or arranging for the furnishing of an item or service that could be paid for, in whole or in part, by a Federal health care program or

   b. Purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering, any good, facility, service, or item that

Defendant's Initials  _ew_

could be paid for, in whole or in part, by a Federal health care program?; and

3. Did you do so knowingly and willfully?